No. 23,016.

THE STATE OF KANSAS, ex rel. RICHARD J. HOPKINS, as Attorney-general, *Plaintiff*, v. FRANK L. TRAVIS, as Superintendent of Insurance, etc., et al., *Defendants*.

SYLLABUS BY THE COURT.

1. TAXATION—*Insurance—Gross Premium Tax Not Collectible on Reinsurance Contracts.* Under sections 5467-5469 of the General Statutes of 1915, which exact from fire-insurance companies a tax of two or four per cent of all the premiums received on account of business done in this state, it is held that this statutory percentage is collectible but once and no more; and additional exactions of such tax upon these premiums cannot be made upon divisions of those premiums among other insurance companies under reinsurance contracts whereby the latter undertake to indemnify the original insurance company or aid it in carrying the risks for which the premiums were originally paid.

2. SAME— *Manner of Collecting Tax on Insurance Premium — Within Discretion of Superintendent of Insurance.* It is within the sound administrative discretion of the superintendent of insurance to direct and require that the statutory tax be paid in the most direct, convenient and accurate way for the efficient conduct of his departmental business.

Original proceeding in mandamus. Opinion filed January 8, 1921. Writ denied.

*Richard J. Hopkins,* attorney-general, and *J. K. Rankin,* assistant attorney-general, for the plaintiff.

*Bennett R. Wheeler, S. M. Brewster, John L. Hunt,* all of Topeka, and *O. B. Ryon,* of Chicago, Ill., for the defendants.

The opinion of the court was delivered by

DAWSON, J.: The state brings this proceeding to require the superintendent of insurance to pay into the state treasury certain sums of money paid under protest to him on a disputed interpretation of certain provisions of statute governing the right of fire insurance companies chartered in other states and in foreign countries to transact business in Kansas. These insurance companies are made defendants, and they assume the burden of the defense, the superintendent merely taking the attitude of awaiting an authoritative interpretation of the pertinent law governing his duty in this matter.

The statute reads:

"Every insurance, guaranty and accident company or association not organized under the laws of this state shall, as hereinafter provided, annually pay a state tax upon all premiums received, whether in cash or in notes, in this state, or on account of business done in this state, for insurance of life, property or interests in this state, or guaranty companies, at the rate of two per cent per annum, which amount of tax shall be assessed by the superintendent of the insurance department, as hereinafter provided." (Gen. Stat. 1915, § 5467.)

"Every such company or association shall, on or before the 15th day of January in each year, make a return, verified by the affidavit of its president and secretary or other chief officers, to the superintendent of the insurance department, stating the amount of all premiums received by said company, whether in cash or notes, in this state, during the year ending on the 31st day of December next preceding. Upon receipt of such returns the superintendent of the insurance department shall verify the same, and assess the taxes upon the various companies on the basis and at the rate provided for in section 1 of this act, and proceed to collect the same from the insurance companies and cover the same into the state treasury." (Id., § 5468.)

"Every insurance, guaranty and accident company or association organized under the laws of any foreign country shall, as hereinafter provided, annually pay a state tax upon all premiums received, whether in cash or in notes, in this state, or on account of business done in this state, for insurance of life, property or interests in this state, or guaranty companies, at the rate of four per cent per annum, which amount of tax shall be assessed by the superintendent of the insurance department as hereinafter [hereinbefore] provided." (Id., § 5469.)

The defendant insurance companies which have been impleaded file answers in which it appears that it is their custom, as soon as they accept fire insurance risks and issue policies to their insured patrons therefor, to cede a part of such in-

surance liabilities to each other or to other companies so that in the event of loss the burden will not fall too heavily on the companies issuing the insurance policies. For example, if a company should issue a policy of fire insurance for $100,000 on a business building and collect the premium therefor, that company would immediately prorate and divide that risk or liability among a number of other fire insurance companies, so that in the event of the destruction of the building by fire, the original insuring company would not be altogether impoverished by the payment of that one loss. Of course, in passing along portions of the liability or risk to these other companies it hands over to them also a proper proportion of the premium which it collected from the insured. The defendant companies attach to their pleadings copies of contracts, called "treaties," covering with elaborate detail the methods of apportioning such liabilities, and for advising each other of the insurance written and thus ceded to the companies associated in these "treaty" contracts. This general scheme of dividing liabilities assumed goes by the general name of reinsurance, and the main question at issue in this lawsuit is whether, under the statutes above quoted, the superintendent is authorized not only to exact the statutory franchise tax upon the premiums collected on the fire insurance policies issued or written in Kansas, but also upon the subsequent divisions of those premiums when they are later apportioned between the companies which take over and assume parts of the risks for which the premiums were collected from the insuring public.

We think not. Once the two-per-cent or four-per-cent tax on all premiums received on account of fire insurance business done in this state is paid, there is an end of the matter. While the state and its insurance department may have a proper interest in this general subject of reinsurance, may question or supervise the business policy, prudence, foresight, economy, and the like, of these elaborate schemes of apportioning and dividing the liabilities and premiums received therefor among companies associated in these "treaty" compacts, yet the statute under which the tax is imposed does not concern itself with these matters. The person who obtains the insurance protection and who pays the premium therefor has no direct

concern in these reinsurance arrangements. He deals only with the company which undertakes to carry the risk; and he looks to it, and only to it, for payment of fire losses covered by his insurance policy. That company has to pay, and the fact that it has divided the premium received from its customer with other companies which under these reinsurance "treaties" must indemnify the company which has to pay the loss is a matter which the insured may never hear of and with which he has no concern.

It must therefore be held that when the proper percentage, two or four per cent, of the premiums collected for insurance business done in this state is paid to the superintendent of insurance, the statute is fully satisfied; and there is no further lawful demand upon the defendants for additional percentages of those premiums on the mere division of them among other companies which by contract undertake to aid or indemnify the insuring company in carrying the risks for which the premiums were originally paid.

This simple and obviously correct interpretation of our statute renders it unnecessary to consider whether the statute, if susceptible of another construction, would reach the premiums divided under these reinsurance contracts if all the business pertaining thereto were transacted outside of this state. We note, however, that the courts which have had to consider that aspect of the matter, as well as the phase of the question which we have discussed, have uniformly arrived at the conclusion that the premiums collected for insurance are subject only to one toll by the state, not successive tolls as the insuring companies' liabilities are apportioned or reapportioned under reinsurance arrangements. (See *State v. Continental Ins. Co.* [Ind. App.], 116 N. E. 929; In re *Continental Casualty Co.* [Iowa], 179 N. W. 185; *People v. American Central Ins. Co.*, 179 Mich. 371.)

The state suggests that if this interpretation of the statute be the correct one, we should also hold that the entire tax should be paid by the original insurance company which collected the premium. This seems to be a matter lying wholly within the sound administrative discretion of the superintendent of insurance, and he can require it to be paid in the most direct, convenient and accurate way for the efficient conduct of his departmental business.

The state's motion for judgment on the pleadings will be denied; and the insurance superintendent is directed to return to the defendants their moneys exacted under protest from them for reinsurance after the proper premium tax has once been paid as provided by law.

Writ denied.