No. 33,371

DR. OPIE W. SWOPE, *Appellant*, v. THE STATE OF KANSAS, FRANK S. BOONE, as Sheriff of Sedgwick County, *Appellee.*

(67 P. 2d 416)

Opinion filed May 8, 1937.

*Tom Harley* and *Tom Harley, Jr.,* both of Wichita, for the appellant.

*Clarence V. Beck,* attorney general, *C. Glenn Morris,* assistant attorney general, and *Eli Eubanks,* county attorney, for the appellee.

*Claude I. Depew* and *Lawrence Weigand,* both of Wichita, as *amici curiae.*

The opinion of the court was delivered by

THIELE, J.: This is an appeal from refusal of the lower court to grant a writ of habeas corpus. The question is the right of an expert witness to refuse to testify unless his fees have been paid, and arises from the following circumstances, concerning which there is no dispute.

One Lillian Taves brought an action against the Safeway Cab Transport & Storage Company to recover for personal injuries. Prior to the trial, at the instance and request of that company, Opie W. Swope, a physician specializing in radiology, took some X-ray

pictures of her arm. At the trial of the action, Doctor Swope appeared as a witness for plaintiff by reason of a subpoena *duces tecum* duly served on him. On the morning of that day, plaintiff's husband called on the doctor, who agreed that if it was satisfactory to the cab company which had employed him to take the X-ray pictures, he would testify as a witness for plaintiff if plaintiff would pay him the customary expert witness fee of $25, the fee to be paid when the doctor arrived at the courtroom in the afternoon. Immediately after being called and sworn, the doctor refused to testify unless his special fee was paid. He admitted that he was offered the ordinary witness fee of $1.50 and would not accept it. After some other statements to the court about the fee, the court directed him to take the stand, which he did under protest. The following questions were asked and answers returned:

"Q. State your name and occupation to the court and jury. A. Opie W. Swope; physician; radiologist is my special line of practice.

"Q. Do you have in your possession X-ray pictures taken of the arm of Lillian Taves? A. I have of her wrist and forearm; yes, sir.

"Q. When were those taken, Doctor? A. December 20, 1935.

"Q. Is that the right wrist and forearm? A. That's the right wrist and forearm.

"Q. Would you produce those please, Doctor? A. No, sir. I will not produce these pictures in evidence."

Thereafter, a colloquy was carried on by the court and the witness in which the witness repeatedly stated he would not testify unless his fees were paid. Finally the court stated:

"You can't stop proceedings of the court because you don't get paid. You will have to testify or be found guilty of contempt of court"—

to which the witness replied:

"Well, I will accept the contempt charge rather than establish a precedent for the medical profession in Sedgwick county."

Thereupon, the witness still refusing to testify, he was fined and ordered committed until the fine was paid. He promptly instituted proceedings for a writ of habeas corpus, and his application being denied, he appealed to this court.

It may be first observed that we have no statute classifying witnesses as expert or nonexpert or providing for other than the statutory witness fees. Under G. S. 1935, 60-2812, refusal to answer as a witness when lawfully ordered may be punished as a contempt of the court by whom his testimony is required. Provisions as to

the right to demand traveling expenses and fees for one day's attendance, and the right to have an attachment for a witness who fails to respond to a subpoena are mentioned only to show there are provisions for claiming statutory fees and to compel attendance of witnesses. Here the witness duly appeared, but after being sworn, refused to testify, giving as his sole reason therefor that he had not been paid an expert witness fee. It may also be observed that by reason of the refusal of the witness to produce the X-ray pictures, the examination had not proceeded to a point where the witness was asked any question which could not have been answered as well by a nonexpert as by an expert witness. Assuming, however, as is now claimed, that the witness based his refusal on the assumption subsequent questions would call for his professional opinion, we shall consider that as the ground of his refusal. It should also be observed in the case at bar that the plaintiff in the suit on trial, who called the appellant as a witness, had not prior thereto· at her own instance requested the appellant to perform any professional service for her, but that on the contrary she had submitted herself to his examination at the instance and. request of the defendant in that suit. We therefore have no case where the physician performed preliminary professional work or study at the instance of the party subsequently calling him as a witness in order that he be prepared to testify.

The question whether an.expert witness may be compelled to testify if special compensation has not been paid him has been considered in many cases. In some of the states there are statutory provisions which permit the trial court to fix such compensation. We have no such statute. There is also to be borne in mind that a so-called expert may be called to testify to facts which are within his knowledge as an ordinary witness. After stating some exceptions and qualifications thereon, the general rule as to compelling an expert witness to testify is stated in 70 C. J. 75 (Witnesses, § 86), viz.:

"The more general rule is that, apart from statute, an expert witness may be compelled to testify as to matters of a professional opinion, or matters to which he has gained a special knowledge by reason of his professional training or experience, without any compensation other than the fee of an ordinary witness, and his refusal to testify unless paid an extra compensation may be punished as contempt."

In 11 R. C. L. 648 (Expert and Opinion Evidence, § 65) it is stated:

"A person of skill and reputation in medical or other science is not thereby exempt from the usual duties of citizenship. If he has personal knowledge of certain facts which are in controversy he may be subpoenaed and compelled to testify, and can claim only the witness fees fixed by law. . . . It seems, however, that the generally accepted American rule is that in the absence of statute an expert stands the same as any other witness and may be compelled to testify without being paid for his testimony as for a professional opinion, though his knowledge of the facts may have been acquired through scientific study and professional practice, but that he cannot be required to make special examination of or engage in experiments concerning the matter in hand, or to undertake any other operations requiring skill and professional training, in order to qualify himself specially to testify in the particular case." (p. 649.)

In 4 Wigmore on Evidence, 2d ed., page 680, §.2203, is the following:

"May an additional, but reasonable charge, proportionate to the value of time spent and skill exercised, be demanded, as a condition precedent to attendance by an expert witness—that is (ante, §§ 560, 1923), by one who is called to testify, not merely to the facts of his simple observation by eye and ear, but to an opinion drawing from the facts such inferences as are receivable only from persons specially qualified by experience or study?  This question, it is to be noted, is not simply whether such witnesses should ultimately be paid larger compensation for their attendance; but whether, as a matter of right and privilege, they are not liable to compulsory process unless such compensation is tendered beforehand.  The regulation of the amount of charges is a large question; but the specific question whether the expert witness has any greater privilege than the ordinary witness may be determined independently of the policy of the other measure.

"At first sight, it might be supposed that the exaction of the valuable special services of an expert, without other than the ordinary witness' pittance, was a hardship which ought not to be imposed: (quoting from decisions).

"But this argument is specious only.  The grounds upon which it may be concluded that no different privilege should be established for expert witnesses than for others, may be summarized as follows:  (1) The expert is not asked to render professional services as a physician or chemist or engineer; he is asked merely, as other witnesses are, to testify what he knows or believes.  (2) The hardship upon the professional man who loses his day's fees of fifty or one hundred or more dollars is no greater, relatively, than upon the storekeeper or the mechanic who loses his day's earnings of two dollars or ten dollars; each loses his all for the day; moreover, though the recoupment of the witness fee of one or two dollars is relatively greater for the mechanic, yet his risk of losing continued employment by enforced absence is greater than for the professional man, and more than equalizes the hardship to him.  (3) It is only by accident, and not by premeditation or deliberate resolve with reference to the litigation, that either has become desirable as a source of evidence; neither the expert in blood stains nor the bystander at a murder has expressly put himself in the way of qualifying as a witness, so that no claim based on a special dedication of services for the case can be predicated of one rather

than of the other. And the main reason why some plausibility has been given to the claim for extra fees is that in some instances the expert has in fact not become desirable by accident, but has made himself the hired partisan of the party summoning him (*ante,* § 563). (4) The practical difficulty of discriminating between various kinds of experts and their earnings, and between that testimony which they give as such and that which they give as ordinary observers, would be serious, and would introduce confusion and quibbling into the law. (5) Finally, so far as concerns the policy of doing whatever should attract and not deter desirable witnesses, it would seem that no special favor need be shown to expert witnesses. No one will ever refrain from entering a professional calling because of the fear of having to spend his time gratuitously at trials; and yet an ordinary person is often deterred from observing (or disclosing his observation) of a street accident or the like, because of the apprehension of being summoned as a witness; so that the latter sort, if either, should be the one to be encouraged by special compensation.

"These reasons, in one or another form, have been expounded in the following judicial utterances (quoting from decisions):

"It has therefore been generally held that an *expert witness is not entitled to demand additional compensation,* other than the ordinary witness fees, before attending to testify on the stand."

And notes and annotations on the general subject of compensation of expert witnesses, their right to refuse to testify, their being compelled to testify, etc., may be found in 27 L. R. A. 669, 5 Ann. Cas. 993; 2 A. L. R. 1576, and 16 A. L. R. 1457. From all of these it is apparent the weight of authority is to the effect that an expert witness may be compelled to testify, even though his stipulated fees have not been paid.

Appellant directs our attention to the fifth amendment to the constitution of the United States providing that no person shall be deprived of his property without due process of law. He argues that the knowledge gained by the expert from his examination is property, and that if he is compelled to testify without his stipulated compensation having been paid, he is unlawfully deprived of his property. A similar contention was made in *Dixon v. The People,* 168 Ill. 179, 48 N. E. 108, where the court cited an Indiana case which held that under the constitution of that state, the giving of testimony was the rendering of services that had to be compensated, but after calling attention to the testimony of a medical witness as to what he had done and observed, as distinguished from medical treatment rendered in pursuit of his profession, held that compelling the witness to testify did not deprive him of his property without reasonable compensation.

The case at bar does not present a situation where the witness, at

the sugestion of the party calling him, did anything by way of preparation to testify, neither does it present any situation where there was any attempt to compel him so to do by any order of the court. His professional services were rendered at the request and cost of another than the party calling him. We place no stamp of approval on the conduct of the plaintiff in the damage action and her husband, either in their agreement to pay a compensation for the witness' testimony, or in their failure to perform the agreement with him. We need not examine carefully into the question of whether his testimony was to be given in an expert capacity. Up to the time of his refusal, the only specific questions asked pertained to his occupation and whether he had taken some X-ray pictures. These questions certainly did not call for expert opinion. It is argued he refused to produce the pictures which he had been compelled to bring under the subpoena *duces tecum*, because he anticipated he would be asked to express his professional opinion based on the pictures. Assuming that to be true, he was not warranted in refusing to produce the X-ray pictures, nor would he have been warranted in refusing to answer questions based thereon.

There are experts of many kinds, professional as well as lay. Many men are experts in certain lines of endeavor. If doctors, dentists, lawyers and engineers may refuse to testify concerning matters on which they may have opinions due to their respective training, simply because special fees have not been paid them, then one qualifying as an expert shoe repairer may not be compelled to state what was the matter with shoes he repaired because what he did was done in an expert capacity and his expert witness fees have not been paid. It can readily be seen that such a situation would be intolerable. It would tend to permit those who could afford it to produce witnesses whose testimony might be said to be expert, and would prevent those without requisite means of the benefit of such testimony. We are not referring to that class of cases where special preparation is required as a condition precedent, but to those where the witness is interrogated as to facts and opinions which he knows and has without such special preparation. In the absence of a statute authorizing the trial court to fix expert witness fees, or permitting the witness to refuse to testify until a stipulated fee has been paid, we are not disposed to hold that a witness claiming to be an expert called upon to give expert testimony may refuse to testify unless his demands have been met. What is here said is not

to be construed as expressing any opinion as to the enforceability of an agreement to pay fees, such as was made in the case out of which the present action arose.

We conclude that the appellant, as a witness in the suit for damages, was not justified in refusing to produce the X-ray pictures and to testify thereafter. Under our statute (G. S. 1935, 60-2812) and under our decisions (*In re Hanson,* 80 Kan. 783, 105 Pac. 694), the trial court found appellant guilty of contempt, and upon his refusal to pay the fine assessed, committed him to jail.

In the proceeding for the writ of habeas corpus the trial court properly denied the application, and its order and judgment are affirmed.