## No. 35,585

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SHAWNEE, *Appellant,* v. ROBINSON F. ABBOTT et al., *Appellees.*

(123 P. 2d 318)

Opinion filed March 21, 1942.

*Ward Martin,* of Topeka, argued the cause for the appellant.

No appearance was made for the appellees.

*Eldon Wallingford,* assistant attorney general, argued the cause, and *Jay S. Parker,* attorney general, appeared on the briefs as *amicus curiae.*

The opinion of the court was delivered by

DAWSON, C. J.: This was an action as authorized by G. S. 1935, 79-2801 *et seq.,* and G. S. 1941 Supp. 79-2801, 79-2802, to foreclose

Shawnee county's tax liens on a large number of parcels of land on which the taxes had been delinquent for many years and where the county treasurer had bid them in for the county pursuant to G. S. 1935, 79-2301 *et seq.*

The action was begun on November 10, 1941. Plaintiff's petition alleged the pertinent facts, that in 1921 the board of county commissioners had formally adopted the provisions of statute which made it the duty of the county treasurer to bid off for the county all land and lots advertised for sale for delinquent taxes and the legal charges thereon (G. S. 1935, 79-2324 *et seq.*), and that all the parcels of land involved had been held by the county unredeemed for more than three and a quarter years.

The petition contained a schedule of 148 items which might be considered as separately numbered causes of action, each describing a separate parcel of land, and showing for how many years the taxes thereon had been delinquent, showing the amount of taxes assessed for each year and the interest and penalties chargeable thereto, together with the name of the record owner, supposed owners and parties known to have some interest in each particular property.

The petition concluded with a prayer requiring the defendants to appear and establish their claim, estate, right, title or interest in the real estate; that the court determine the amount of the taxes, interest and penalties chargeable to each parcel of land; that the amount so found due be adjudged to be a first and prior lien; that such lien be foreclosed and the property sold at public sale by order of court; that after such sale and confirmation of sale the defendants be barred of all interest in the property; and that the plaintiff have such other and further relief as might be equitable and proper in the premises.

Summons was issued on November 10, 1941, to the defendants, who were all those in whose names the properties stood of record together with all others known or supposed to have an interest in the schedule of 148 items or causes of action. The sheriff made personal service on Alice L. Curtis, interested in a parcel of land described in scheduled item No. 15, on which the taxes had been delinquent for eighteen years, from 1922 to 1940, both inclusive, with interest and penalties chargeable thereto, in the sum of $2,649.21; also, personal service on Alice Lakin Curtis, similarly interested in parcels of land described in scheduled items Nos. 16 and 17; also,

resident service on C. M. McPherson, similarly interested in scheduled item No. 15. The sheriff's return showed that Mary L. Pullman, similarly interested in scheduled item No. 17, was "not found."

Affidavit for service by publication was filed on December 23, 1941, and pursuant thereto publication notice was given to all the parties defendant in the foreclosure action, which notice was published in the Topeka Daily *Capital* on December 24 and 31, 1941, and January 7, 1942. The notice contained the proper descriptions of all the lands affected, the taxes and charges thereon, and the names of the parties defendant concerned therewith.

Answer day, February 9, 1942, passed without appearance or pleading by any of the defendants concerned in scheduled items 15, 16, and 17. Thereafter plaintiff filed a motion reciting defendants' default of appearance. It was alleged—

"That after the preparation and filing of the petition herein the taxes for 1941 have been legally assessed and charged against said tracts of land, lots and pieces of real estate and are past due and unpaid and constitute an additional lien and charge against the respective described properties."

The motion prayed judgment in accordance with the petition and that the taxes of 1941 and interest thereon be included in the judgment.

Plaintiff also filed a motion for an immediate hearing on its motion for judgment. The motion also included a verified allegation that plaintiff did not know and with diligence had been unable to learn whether any of the defendants concerned in scheduled items 15, 16 or 17, if living, were in the military service of the United States, or if dead whether their unknown heirs, devisees, executors, administrators, trustees, guardians, successors or assigns were in such military service.

In support of the allegations of its petition and motion for judgment, plaintiff called as a witness an employee of the county treasurer who testified that she compiled the factual data from the treasurer's records as set out in plaintiff's petition and particularly in scheduled item 15 of plaintiff's petition; that the amount of delinquent taxes, interest and other proper charges thereon was $2,649.21 down to September 2, 1941; that from the latter date down to February 15, 1942, the additional interest accrued thereon was $119.21, and that the current taxes (for 1941) which had become due since the action was begun, but which had not been paid were $24.20, and that the interest due thereon was $0.19; and that the first half of said current taxes, payable on or before December 20, 1941, was $12.10.

The same witness gave similar testimony pertinent to scheduled items 16 and 17.

The deputy clerk of the district court, called as a witness, testified that the costs already incurred in this foreclosure action and her estimate of costs yet to be incurred, based upon the experience of similar cases, would amount to $1,632.55:

"THE COURT: You have made a computation I suppose of the proportionate part of the costs that should be assessed against each property.

"[THE COUNTY ATTORNEY]: I have, your honor.

"THE COURT: How does that figure come out?

"[THE COUNTY ATTORNEY]: The figure comes out $11.03 per property.

"THE WITNESS: I have taken into consideration in estimating this cost statement, the entry of judgment, the issuance of an order of sale, publication notice of sheriff's sale, sheriff's return, confirmation, etc."

Whether the first half of the current taxes (for 1941) which had accrued and were in default when the cause was ripe for judgment on February 19, 1942, should be included in the amount of the judgment in each scheduled item was the only legal question which gave the trial court any difficulty, and out of an abundance of caution the court ruled them out. The correctness of that ruling is the single question this court is asked to consider in this appeal.

In its memorandum opinion the trial court noted that the action was begun on November 10, 1941, by which time the taxes for 1941 were due and payable. (G. S. 1935, 79-1804.) The court also noted that the motion to include the taxes of 1941 in the judgment was filed after the answer day had expired. The court reasoned that while plaintiff's motion might be regarded as a supplemental petition, yet the court would not have jurisdiction to include the taxes for 1941 in the judgment because they were not within the scope of the publication notice and no further notice was given to the defendants as required by G. S. 1935, 60-764. The court also reasoned that if the current taxes accruing in the year the tax foreclosure suit is begun are included in the judgment and the taxpayer should invoke his right to redeem from the judgment before the day of sale, he would be required to waive his statutory privilege to pay but half his taxes for the current year on or before December 20, and the second half on or before June 20, of the following year, and would likewise be deprived of his right to a discount of two percent on payment of all the taxes for 1941 by December 20.

It is just as well that the trial court held that these several mat-

ters required a denial of plaintiff's motion to include the taxes of 1941 and interest in the judgment, since there was no adverse party participating actively in the litigation and the only way to get an authoritative ruling which would have uniform operation throughout the state in tax foreclosure cases was to enter such a judgment as would enable the plaintiff to appeal.

As to the taxpayer's right to pay the first half of his current taxes in December and the second half in the following June without interest or penalty and to a discount if he paid them all by December 20, we think the maxim *"de minimis"* should be applied. A vastly more important principle in respect to the operation of the machinery of government is to search for a practicable construction of statutory powers, duties and regulations which will permit the government to work, to work effectively; and it is perfectly obvious that the *trivia* relating to the taxpayer's privileges as to how and when he shall pay his current taxes must not be given such supervening potency as to render the tax foreclosure impracticable. It should be kept in mind that the statute contemplates that a tax foreclosure action is likely to involve scores and perhaps hundreds of causes of action against scores or hundreds of defendant owners and others claiming under them. It is a laborious work of many weeks for the county attorney and other county officials and employees to get the factual data together for inclusion in such a tax foreclosure suit. And of necessity, before judgment could regularly be entered in the action, the factual situation as to taxes, interest, and charges would be in constant change, so that if judgment should be withheld until the petition could be amended or supplemented to bring it up to date, it would inevitably occur that the factual situation would again be changed before judgment could be entered. This would bring to naught the comprehensive statutory scheme supplied by the legislature to enable a county to realize on its tax liens and to get the long lists of properties of delinquent taxpayers off its hands and into the hands of new owners ready, willing and able to pay the taxes thereon, and thus ameliorate the perplexing financial problems of county government.

The statute authorizing the foreclosure action as amended by G. S. 1941 Supp. 79-2801 does not require perfect precision of pleading in respect to the "taxes, charges, interest and penalties," on each parcel of land on which the county has a lien but only that such statement be correct "as far as practicable." Plaintiff's petition

clearly satisfied that requirement. In no tax foreclosure case, nor in any other lawsuit, is it possible when the action is filed to allege exactly what miscellaneous charges and costs will have to be included in the judgment. The tax foreclosure statute contemplates this. It provides:

"It shall be the duty of such district court, in as summary way as possible, to investigate and decide what taxes shall have been legally assessed and charged on such tract, lot, or piece of real estate, and to render judgment therefor, together with the interest, charges and penalty thereon as provided by law, to the date of such judgment, . . ." (G. S. 1941 Supp. 79-2803.)

It should also be kept in mind that from the first day of November the current taxes assessed become a lien on real property, and the tax foreclosure statute has a provision which recognizes this, where it provides that when the sale following judgment in foreclosure of liens on properties bid in by the county for delinquent taxes, the county board may direct the sheriff to bid in the property for the county in the event any parcel of land does not sell for an amount equal to the entire lien for taxes, penalties, interest and costs. (G. S. 1941 Supp. 79-2804.) What could be meant by the "entire" lien except a lien which would include the lien for current taxes, and how would the sheriff know that the highest bid was not equal to the amount of the entire lien unless it was incorporated in the judgment? Moreover, when the property has been sold and the sale confirmed, the purchaser is entitled to a deed (G. S. 1941 Supp. 79-2804) conveying a clear title good against all the world (*Van Doren v. Etchen,* 112 Kan. 380, 211 Pac. 144; *Rathbun v. Williams,* 154 Kan. 600, 121 P. 2d 243). Who would buy if his purchase was subject to current taxes, interest and penalties, the amount of which would have to be guessed? To insure the grantee a clear title unencumbered by current tax liens, the statute makes it the duty of the county treasurer to cancel all taxes charged against the real estate which has been sold and conveyed pursuant to the sale in foreclosure and confirmation thereof. (G. S. 1941 Supp. 79-2805.)

This court holds that the unpaid current taxes and interest thereon which accrued between the time the action in foreclosure was begun and the time the cause was ripe for judgment should be included in the amount of judgment in rem rendered in favor of plaintiff. So that this may be done this cause is remanded to the district court with instructions to modify its judgment in accordance with the views herein expressed.

HOCH, J., not participating.