No. 35,614

J. W. WOMER, *Appellant,* v. W. E. ALDRIDGE et al., *Appellees* and *Cross-appellants.*

(125 P. 2d 392)

Opinion filed May 9, 1942.

*Austin M. Cowan* and *Vincent Hiebsch,* both of Wichita, argued the cause, and *Robert H. Nelson, W. A. Kahrs, C. A. McCorkle* and *Fred Aley,* all of Wichita, were on the briefs for the appellant.

*Pat Warnick,* county attorney, argued the cause, and *Carl O. Bauman,* deputy county attorney, was on the briefs for the appellees. ·

*Ward Martin,* of Topeka, filed a brief as *amicus curiae.*

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal from a judgment in an action for a declaratory interpretation of a certain feature of G. S. 1941 Supp. 79-2801 *et seq.,* which deals with the foreclosure of tax liens on lands sold for delinquent taxes and bid in for the county.

It appears that Sedgwick county has a long-standing financial problem arising from the nonpayment of taxes on real estate. At the present time there are more than 11,000 tracts and parcels of land in that county on which no taxes have been paid for many years, as to all of which the annual mummery of advertisement for sale and bidding in for the county is followed at great expense to the county but which brings no cash into the coffers of the county treasurer.

While this financial dilemma is primarily the concern of the board of county commissioners as the business managers of the county's affairs (G. S. 1935, 19-101; *Comm'rs of Leavenworth v. Brewer,* 9 Kan. 307, 318), the problem not only adversely affects the fiscal system of the county but likewise those of every township, city, board of education and school district in the county, and measurably affects the general revenues of the state itself.

As early as 1877 the legislature set about the task of devising some effective means to relieve the counties of the financial embarrassments arising from the failure of the ordinary statutory processes for dealing with delinquent tax lists. By chapter 39 of the Session Laws of that year, a statute was enacted which authorized the institution of an action to establish a lien on lands bid in by the county and which had been unredeemed for three years, and to re-

duce such lien to judgment in rem and to sell the properties affected as upon execution. This statute was repealed by chapter 43 of the Session Laws of 1879, with a proviso that actions pending which had been based on the statute should not be affected by the repeal but should be prosecuted to final judgment.

The next legislative attempt to deal with the chronic ailment of delinquent tax lists appears to have been the enactment of chapter 392 of the Laws of 1901, G. S. 1901, § 7718 *et seq.*, entitled "An act in relation to the collection of delinquent taxes on real estate, and providing a remedy for sale thereof by decree and order of court." Its general terms remained unmodified by the general revision of 1923, and the annotation to R. S. 79-2801 shows that advantage was frequently taken of its terms, and occasionally required the attention of this court.

Amendments to the statute of 1901 were enacted in 1931 (ch. 306), and in 1933 (ch. 312, § 11), which are reflected in G. S. 1935, 79-2801. The latest enactment which amends and repeals many of the earlier provisions of our taxation statutes is chapter 375 of the Laws of 1941 (G. S. 1941 Supp. 79-2801 *et seq.*), some of which will require critical examination as we proceed.

The foregoing résumé of statutes running over sixty years of Kansas history, but which may not be complete, is marshaled here to emphasize what we recently said in the tax foreclosure case of *Shawnee County Comm'rs v. Abbott,* ante, p. 154, 123 P. 2d 318 (decided March 21, 1942), concerning the responsibility of all who have official part in public affairs, including the judiciary, "to search for a practicable construction of statutory powers, duties and regulations which will permit the government to work, to work effectively," (p. 158) and to refrain from any unnecessary judicial pronouncements which will render abortive the efforts of the legislature to deal with state and local governmental problems in realistic fashion.

The official census of 1940 states that Sedgwick county has a population of 128,142, and we take official cognizance that the development of war industries in and near Wichita has recently brought a large increase of population to that community. In the argument of this case it was stated that this recent influx of population is estimated at 30,000 people. Consequently there is an acute demand for building sites to supply the need for homes for this vast number of newcomers. This demand can be satisfied

only by sale in foreclosure of some thousands of Wichita town lots and parcels of land in and near Wichita on which the county has liens for unpaid taxes which have piled up during the last quarter of a century. To energize the prosecution of such foreclosure suits to judgment and to dispose of the affected properties by execution sales, so that clear and unimpeachable new titles will issue to the purchasers of these foreclosed properties (*Van Doren v. Etchen*, 112 Kan. 380, 211 Pac. 144), the latest statute makes it the imperative duty of the county commissioners to order the county attorney to institute foreclosure proceedings "in all cases in which real estate has been or shall be sold and bid in by the county at any delinquent tax sale and shall remain or shall have remained unredeemed for the period of three years after such sale." Failure to perform this duty by a county commissioner or county attorney shall work a forfeiture of his office. For the most part the means by which the county commissioners may discharge the many and varied duties imposed on them are supplied by express statutes, although occasionally the courts have had to concede that there is a narrow field in which the doctrine of implied powers must be permitted to operate as in *State, ex rel., v. Younkin*, 108 Kan. 634, 196 Pac. 620, where it was said:

"When the legislature confers power in general terms upon an official body, without prescribing the details for the exercise of that power, the courts will not be officious to interfere with the official body's discretionary methods of performing the public duty intended by the legislature in granting such powers. (*Fairchild v. City of Holton*, 101 Kan. 330, 333, 166 Pac. 503; *The State, ex rel., v. Travis*, ante, pp. 257, 260, 195 Pac. 182.)" (p. 639.)

The pertinent syllabus of the same case reads:

"When, by statute, official powers and duties are conferred or imposed upon a public officer or official board, the only implied powers possessed by such officer or board are those which are necessary for the effective exercise and discharge of the powers and duties expressly conferred and imposed." (Syl. ¶ 4.)

Other cases recognizing this principle of statutory construction are *Jones v. Board of Medical Examination*, 111 Kan. 813, 815, 816, 208 Pac. 639; *State, ex rel., v. Wooster*, 111 Kan. 830, 835, 208 Pac. 656; *State, ex rel., v. Davis*, 114 Kan. 270, 289 *et seq.*, 217 Pac. 905; *State, ex rel., v. Bradbury*, 123 Kan. 495, 498, 256 Pac. 149.

The courts cannot shut their eyes to the realities of such a situation as now confronts the county commissioners and county at-

torney of Sedgwick county in their efforts to comply with the imperative mandate of the legislature, and some leeway must be accorded them as to the means by which their prodigious task of preparing and prosecuting to a conclusion tax foreclosure suits affecting 11,000 tracts of land can be accomplished.

In the exercise of their discretion, and on the assumption that it is within their implied powers, the county commissioners have made arrangements with firms of abstractors in Wichita to make the requisite examination of the public records to ascertain who may have some color of interest in the lands which are to be subjected to foreclosure and sale to satisfy the county's tax liens, so that all such persons may be impleaded in the actions, and so that the new titles which will vest in the purchasers on confirmation of the foreclosure sales shall be clear, paramount and unassailable. (*Shawnee County Comm'rs v. Abbott*, supra.) By these arrangements the abstractors are to provide certificates of title pertinent to each tract of land on which foreclosure of the county's tax lien is sought, and the county will pay $7.50 for each certificate. Such sums are to be paid out of the general fund of the county. By another arrangement the county board has tacitly agreed to employ attorneys to assist the county attorney in these tax foreclosure suits and to pay for the services of such attorneys out of the county general fund.

These arrangements have precipitated the action with which we are presently concerned. The plaintiff is a Sedgwick county taxpayer who apparently brought this action under authority of G. S. 1935, 60-1121 to obtain a declaratory judgment on the authority of the county board to make these arrangements at the expense of the county.

The pertinent facts were developed by the pleadings and by stipulation of counsel. The obvious importance of the legal questions prompted the four trial judges of the district court to hear the cause *en banc*. The court reached unanimous conclusions of law and fact, which read:

"That in order to proceed under chapter 375 of the Session Laws of Kansas for 1941—

"(a) It is necessary for the county attorney, before filing tax foreclosure suits, to have a search made of the record title of the real estate upon which the foreclosure suits are to be filed for the purpose of determining the names of persons claiming or asserting interest in the property, and the court further finds that the county attorney's office does not have sufficient help to make

this search, and, therefore, it is necessary to incur certain expenses incidental to the filing of the tax foreclosure suits;

"(b) That the expenses incurred in this way cannot be included as costs in the foreclosure action.

"Now, therefore, it is considered, ordered and adjudged by the court that in order to proceed under chapter 375 of the Session Laws of Kansas for 1941—

"(a) It is necessary for the county attorney, before filing tax foreclosure suits, to have a search made of the record title of the real estate upon which the foreclosure suits are to be filed for the purpose of determining the names of persons claiming or asserting interest in the property, and the court further finds that the county attorney's office does not have sufficient help to make this search, and, therefore, it is necessary to incur certain expenses incidental to the filing of the tax foreclosure suits;

"(b) That the expenses incurred in this way cannot be included as costs in the foreclosure action."

The cause is brought here for further review.

Under the doctrine of implied powers which we have discussed above, there can be no doubt that the county commissioners can contract with abstractors to pay reasonable sums for their necessary services in searching the records to ascertain who may be the owners or supposed owners and "all persons having or claiming to have any interest" in each particular tract of real estate on which foreclosure of the county's tax lien is sought, so that they may be impleaded and bound by the judgment. (G. S. 1941 Supp. 79-2801.) But is it imperative that such necessary service of abstractors can only be paid out of the general fund of the county—after appropriate and timely provision is made therefor in the budget and cash-basis statute? This court is inclined to hold that there is much merit in the appellant's contention that such service is a proper charge to be allowed by the court in the foreclosure action—not necessarily $7.50 for each search and certificate relating to each separate tract of land as agreed to between the county board and the abstractors, but whatever charge for such service the court itself should find to be reasonable. The court itself has the duty to ascertain and "in the decree [to] state the name or names of the particular defendant or defendants who has or who claims to have any interest in the tract, lot or piece of real estate upon which a lien is fixed by order of the court." (G. S. 1941 Supp. 79-2802.) To properly discharge that duty the court is certainly empowered to call the abstractors to testify or more conveniently to certify to the court the names of the persons who are to be bound by the judgment. Of course, if abstractors are called as ordinary wit-

nesses to testify as to what they know they are entitled to no more than the regular witness fees (*Swope v. State*, 145 Kan. 928, 67 P. 2d 416), but where they have to make special preparation, as experts, to assist the court, they are entitled to special compensation to be included as "charges" in the judgment. (70 C. J. 76.) And the court can include in its judgment a reasonable charge for such abstractor's service. If we were required to rely on analogous precedents for such charges they would not be hard to find (*Pitts v. Milling Co.*, 117 Kan. 626, 630, 233 Pac. 114; *Central Trust Co. v. Harris*, 152 Kan. 296, 103 P. 2d 902; 7 R. C. L. 783, 785, 786, 796, .797; 20 C. J. S. 300, 361), but the legislature has saved us the trouble by expressly sanctioning them. In G. S. 1941 Supp. 79-2803, it is provided that included in the judgment shall be the tax legally assessed against each piece of real estate, together with the interest, charges and penalty to the date of the judgment, and to order the sale thereof "for the payment of such taxes, charges, interest and penalty and the costs of such proceedings and sale." No courthouse official needs elucidation of the terms taxes, interest, penalty, and costs. They deal with them every day. But the term "charges" is newly introduced into the tax foreclosure statute by the amendment of 1941. It does not appear in G. S. 1935, 79-2803, which it supersedes. We think it was intended to include just such unusual charges in these tax foreclosure suits as would not fall in the familiar category of costs. It has a broader meaning than that of costs. (Black's Law Dict., 3d ed. 310.)

It might be argued that the point is not important, since the money to pay the abstractors' charges will have to come out of the proceeds of the foreclosure sales anyway, whether they are paid by the clerk of the court on order of court or by the county treasurer on county warrants. But if no provision has been made in the county budget to pay these charges there may be difficulty or delay in their payment. Their payment as legitimate charges in the litigation to be allowed and paid by the court will create no difficulty whatever. Moreover, there is another feature of the statute of 1941 which is not without significance. It provides that if the owner of the property comes forward with the money to redeem his property before it is sold by the sheriff, he is excused from paying the "charges" such as we have discussed and which are authorized to be included in the judgment along with the taxes, charges, interest, penalty and costs. All he is required to pay is the amount of the lien with interest at 10 percent with a propor-

tionate share of all cost and accrued costs. Reasoning thus, if the delinquent taxpayer redeems before the sheriff's hammer falls, he is to be excused from paying the abstractor's charge, which is of no service to him, but which is a service to the court, to the plaintiff and to a purchaser at the foreclosure sale.

It is also contended that the trial court erred in holding that attorneys' fees in these tax foreclosure suits cannot be allowed as "charges" under the statute of 1941. We think this matter is on quite a different footing from the abstractors' charges. In the matter of payment of compensation for abstractors' services there is no statute directly on the point. The power to pay them is deduced by necessary implication—that the mandate of the legislature may be obeyed by the county board, the county attorney, and by the court itself. But in respect to the employment of attorneys to assist the county attorney and his staff of assistants whose positions are created by express statute (G. S. 1941 Supp. 28-604), the board of county commissioners is authorized by two express provisions of statute to employ additional counsel, viz.:

"That when, in the judgment of the board of county commissioners of any county in this state, it becomes necessary or expedient, the said board of county commissioners may employ an additional attorney at law to assist the county attorney of its county in any specific investigation; prosecution or any civil or criminal matter involving the duties of said county attorney, and the said board of county commissioners may pay such attorney so employed reasonable compensation for his services, the same to be charged to the general fund of said county." (G. S. 1935, 19-723.)

"That in any civil litigation wherein the county may be either plaintiff or defendant, if the county attorney or his deputies are interested directly or indirectly, or if the board of county commissioners believes that the time at the disposal of the county attorney's office is insufficient to give proper attention to such litigation or if for any other reason the board of county commissioners deems it necessary for the protection of the public interests, it may employ special counsel for such case or cases and pay reasonable compensation therefor, not exceeding the sum of three thousand dollars in any one year." (G. S. 1935, 28-319.)

The express provisions of statute just quoted leave nothing open to construction nor for the operation of implied powers.

It follows that the district court's judgment should be modified insofar as it denies that court's authority to include in the judgment in tax foreclosure suits reasonable compensation as charges for the necessary services of abstractors; and in all other respects the judgment is affirmed.